**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

TIP SYSTEMS, LLC and                §
TIP SYSTEMS HOLDING CO., INC.,      §
                                    §
        Plaintiffs,                 §
                                    §
V.                                  §        CIVIL ACTION NO. H-06-0253
                                    §
SBC OPERATIONS, INC., *et al.*,     §
                                    §
        Defendants.                 §

**MEMORANDUM AND ORDER**

TIP Systems, Inc. and TIP Systems Holding Co. ("TIP Systems") sued SBC
Operations, Inc., Securus Technologies, Inc., Conversant Technologies, Inc., AT&T
Corporation, TCG Public Communications, Inc., and John D. Profanchik, alleging patent
infringement.  TIP Systems holds United States Patent No. 6,009,169 (the "'169 patent") and
United States Patent No.6,152,828 (the "'828 patent").  The '169 patent covers an "inmate
phone" supplied to correctional facilities for prisoners' use.   The '828 patent is a
continuation-in-part of the '169 patent.  TIP Systems alleges that the defendants' inmate
telephones infringe one or both of these patents.

This court granted a joint motion to dismiss with prejudice SBC Operations, Inc.,
AT&T Corporation, and TCG Public Communications, Inc. (Docket Entry No. 45).  Securus
Technologies, Inc. ("Securus") has moved for summary judgment.  (Docket Entry No. 63).
TIP Systems has responded, opposing the motion and renewing its motion to stay pending

the outcome of the appeal from a judgment of noninfringement in a related case.  (Docket Entry No. 60).  Securus has replied, (Docket Entry No. 64), and has also moved to strike summary judgment evidence submitted by TIP Systems in its response, (Docket Entry No. 66).  TIP Systems has responded to the motion to strike.  (Docket Entry No. 67).

Conversant Technologies, Inc. ("Conversant") and Profanchik have moved for sanctions against TIP Systems.  (Docket Entry No. 58).  TIP Systems has responded. (Docket Entry No. 59).

Based on a careful review of the motions, responses, and replies; the parties' submissions; the record; and the applicable law, this court denies TIP System's renewed motion to stay, denies Securus's motion to strike, grants Securus's motion for summary judgment, and denies Conversant's motion for sanctions.  The reasons for these holdings are set out below.

## I.    Background

TIP Systems manufactures and sells a cord-free telephone for prisoners to use in correctional facilities.  Because the telephone is cord-free, inmates cannot "hang themselves with the handset cord" or "break the handset cord off and use the telephone handset as a weapon."  (Docket Entry No. 63, Ex. A-1).  The '169 patent discloses a telephone in which a conventional telephone handset is housed within a compartment and mounted behind the front wall of that compartment.  The earpiece and mouthpiece of the handset extend through the front wall.  A push-button dialing pad on the outside of the wall allows the user to dial a number.  The '828 patent discloses a telephone in which a separate, unconnected

2

mouthpiece and earpiece are mounted on the front wall of a housing compartment by an annular seal.  No handset or handle connects the mouthpiece and earpiece, as in the '169 patent.  The mouthpiece and earpiece extend through the front compartment wall to provide a relief surface on the outside of the compartment wall for the user's ear and mouth.  The mouthpiece and earpiece are electrically connected to an electronic circuit board housed inside the compartment.  The circuit board is electronically connected to the push-button dialing pad, a phone line, and an activation switch that allows the user to initiate a call.  The activation switch is electronically connected to the circuit board and the phone line.  A push-button dialing pad on the front of the housing allows the user to dial a number.

Securus is the parent corporation of Evercom, Inc., Evercom Systems, Inc., Evercom Holdings, Inc., T-NETIX, Inc., T-NETIX Telecommunications Service, Inc., and TX Holdings, Inc. ("Evercom" and "T-NETIX").  Evercom purchases inmate telephones from Independent Technologies, Inc. and sells the phones to correctional facilities.  Two of these phones include the 7090CFSS (cord-free, stainless steel) model and the 7090SPSS (speaker phone, stainless steel) model.  The 7090CFSS model has a separate mouthpiece and earpiece mounted to the inner surface of the front wall.  The mouthpiece and earpiece extend through the wall.  The 7090SPSS model also has a separate mouthpiece and earpiece secured to the inner surface of the front wall, but the mouthpiece and earpiece do not extend through the front wall.  Instead, the components are even with the front wall of the housing.  Neither model uses a handle to connect the earpiece and mouthpiece.  Both models have electric wires that connect the activation switch and the electronic circuit cord, but these wires do not

3

connect to the phone line.

TIP Systems alleges that both the 7090CFSS model and the 7090SPSS model infringe the '169 and '828 patents.   On September 24, 2004, TIP Systems sued Phillips & Brooks/Gladwin, Inc., Phillips & Brooks/Gladwin, Inc. t/a PBG, Inc., PBG, Inc; Acoustics Development Corporation, Acoustics Development Corporation t/a PBG, Inc., Independent Technologies, Inc., and Independent Technologies, Inc. t/a Wintel, alleging infringement of the '169 and '828 patents. *TIP Systems, LLC and TIP Systems Holding Co., Inc. v. Philips & Brooks/Gladwin, Inc., et al.*, No. H-04-3718, is referred to as the "related case."  On May 10, 2005, Evercom and several related entities were added as defendants in the related case. On December 21, 2005, TIP Systems filed a motion for leave to amend to add Securus, Conversant, and Profanchik as defendants in the related case.  The motion was denied on January 10, 2006.[1]

TIP Systems sued Securus, Conversant, and Profanchik separately in this court on January 23, 2006.  (Docket Entry No. 1).  On February 28, 2007, the court in the related action granted Evercom's summary judgment motion and entered final judgment against TIP

_____

[1]Securus objects to Exhibit C of TIP Systems's summary judgment motion, the declaration of Matthew Kelly, which authenticates copies of documents that TIP Systems submitted as summary judgment exhibits.  Securus argues that the declaration was not made under penalty of perjury, the declaration is not properly authenticated, and the declarant lacks personal knowledge to authenticate the exhibits. (Docket Entry No. 66 at 1).  In its response, TIP Systems submits a revised declaration made under penalty of perjury in which Kelly asserts that he is personally familiar with the facts of the case.  (Docket Entry No. 67, Appendix 1).  TIP Systems lays a sufficient predicate to authenticate the revised declaration.  Securus's motion to strike Kelly's declaration is denied.

Securus also objects to Exhibit D of TIP Systems's summary judgment motion, the docket report from the related case, on the grounds that the report is hearsay, is not properly authenticated, and is irrelevant.  The docket report is a self-authenticating public record.  Securus's motion to strike the docket report is denied.

Systems.  TIP Systems has appealed to the Federal Circuit.  The appeal is pending.

In this suit, Securus moves for summary judgment.  Securus asserts that as a holding company that does not provide or operate inmate telephones, it is not a proper party in this suit.  Securus argues that under *res judicata*, the judgment in the related suit precludes this suit against Securus.  Securus also argues the 7090CFSS and 7090SPSS phones do not infringe the '169 and '828 patents literally or under the doctrine of equivalents.  Securus asserts that the '169 and '828 patents are invalid for reasons that include anticipation and obviousness.  Finally, Securus contends that summary judgment is appropriate because of TIP Systems's inequitable conduct in failing to disclose prior art to the United States Patent and Trademark Office ("USPTO").

TIP Systems responds by asserting that Securus is a proper defendant because it profits "from the business of selling telecommunications services" and is "involved in every aspect of the inmate phone business of its subsidiaries."  (Docket Entry No. 60 at 1–2).  TIP Systems notes that the related case is currently on appeal and renews its motion to stay the current case until the appeal is resolved.  TIP Systems contends that *res judicata* does not preclude this suit because Securus "has argued that it is not an identical party . . . or party in privity" to Evercom and cannot assert preclusion from the judgment in the related action against Evercom.  (Docket Entry No. 60 at 8).  Finally, TIP Systems argues that summary judgment based on alleged inequitable conduct is inappropriate because there was no prior art to disclose.

The arguments are analyzed below.

5

## II.       The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action."  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.

6

The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. ExxonMobil Corp*., 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

## III.    Is Securus a Proper Party to This Suit?

Securus asserts that it is a holding company that does not enter into contracts or provide inmate telephone services or hardware, and that only its subsidiaries, Evercom and T-NETIX, are tariffed entities that may enter into contracts to provide the 7090CFSS and 7090SPSS phones to correctional facilities. TIP Systems responds by arguing that Securus is a proper defendant because it "is in the business of selling and offering for sale inmate phone services," (Docket Entry No. 60 at 7), and because Securus is "involved in every aspect of the inmate phone business of its subsidiaries," (*id.* at 1–2).

7

The Federal Circuit has held that a parent corporation may be liable as a direct infringer under 35 U.S.C. § 271(a) for infringement by subsidiary corporations only if "the evidence reveals circumstances justifying disregard of the status of [the subsidiaries and the parent] as distinct, separate corporations." *A. Stucki Co. v. Worthington Inds., Inc.*, 849 F.2d 593, 596 (Fed. Cir. 1988); *see also Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("In the absence of evidence showing that the parent company either was an alter ego of the subsidiary or controlled the conduct of the subsidiary, we refused to find direct infringement [in *Stucki*].").  "Mere ownership of stock is not enough to pierce the corporate veil" to hold a parent company liable for its subsidiary's patent infringement. *Stucki*, 849 F.2d at 598 (citing *Milgo Elec. Corp. v. United Bus. Commc'ns*, 623 F.2d 645, 662 (10th Cir. 1980).  Similarly, in *Tegal* the Federal Circuit found that the plaintiff had introduced no evidence showing that the defendant parent corporation "formulates, directs, or controls [its subsidiary's] operations or that it is in control of the management, policies, and operation of [its subsidiary." *Tegal*, 248 F.3d at 1380.

Courts determining whether a defendant parent corporation may be held liable for the infringement by a subsidiary corporation under *Stucki* and *Tegal* examine whether the plaintiff has shown that the corporate veil between the parent and subsidiary may be pierced. *See, e.g.*, *Sorensen v. Black & Decker Corp.*, No. 06cv1572 BTM (CAB), 2007 WL 951839, at *3 (S.D. Cal. Feb. 27, 2007) ("To prove liability for direct patent infringement, [the plaintiff] must show that [the defendant] either (1) makes, uses, offers to sell, sells, or imports products that use the [patented] process without authorization; or (2) controls similar

8

conduct undertaken by its subsidiaries such that it justifies piercing the corporate veil.");

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 450 F. Supp. 2d 757, 760 (E.D. Mich. 2006)

("Some facts that justify piercing the corporate veil [in a patent infringement case] are facts

showing the existence of an agency relationship between the entities where the parent

effectively controls the conduct of the subsidiary."); *Aspex Eyewear, Inc. v. Altair Eyewear,*

*Inc.*, 361 F.Supp.2d 210, 217 (S.D.N.Y. 2005) (concluding that "the clearest statement from

[*Stucki* and *Tegal*] suggests that the standard for piercing the corporate veil must be met

before a parent may be held liable for the acts of its subsidiary"); *accord Phonometrics, Inc.*

*v. Resinter N. Am. Corp.*, 124 F.3d 229, at *3 (Fed. Cir. 1997) (affirming the district court's

holding that a subsidiary could not be held liable for its parent corporation's alleged

infringement on the ground that "a subsidiary is not liable for acts of its parent, and vice

versa (absent some piercing of the corporate veil)").

In deciding whether to pierce the corporate veil, a court "must start from the general

rule that the corporate entity should be recognized and upheld, unless specific, unusual

circumstances call for an exception." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d

544, 552 (Fed. Cir. 1990) (citing *Zubik v. Zubik*, 384 F.2d 267, 273 (3d. Cir. 1967)) (internal

quotation marks omitted).  A court may "exert its equitable powers and disregard the

corporate entity if it decides that piercing the veil will prevent fraud, illegality, injustice, a

contravention of public policy, or prevent the corporation from shielding someone from

criminal liability." *Id.* (citing *Zubik*, 384 F.2d at 272).  The law of the circuit in which the

district court sits applies to determining whether to pierce the corporate veil. *See Wechsler*

9

*v. Macke Int'l Trade., Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) ("Since the alter ego issue is not unique to patent law, we apply the law of the regional circuit.").

State and federal alter-ego tests in the Fifth Circuit are viewed as interchangeable and either can apply in a federal question case. *See Chao v. Occupational Safety and Health Review Comm'n*, 401 F.3d 355 (5th Cir. 2005) (refraining from discussing "whether state or federal alter ego law applies in this administrative case not arising under diversity jurisdiction" because "state and federal alter ego tests are essentially the same"); *Century Hotel v. United States*, 952 F.2d 107, 110 n.4 (5th Cir. 1992) ("State and federal alter ego tests are essentially the same. Our non-diversity alter ego cases rarely state whether a state or federal standard controls, and apply state and federal cases interchangeably."); *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 690 n.6 (5th Cir. 1986) ("Here, we find no need to determine whether a uniform federal alter ego rule is required, since the federal and state alter ego tests are essentially the same. Our non-diversity alter ego cases have rarely stated whether they were applying a federal or state standard, and have cited federal and state cases interchangeably.").

In *Jon-T*, the court developed "a laundry list of factors to be used in determining whether a subsidiary is the alter ego of its parent," such that a court acting in its equitable capacity may pierce the corporate veil. *Jon-T*, 768 F.2d at 691. These factors include whether:

> (1) the parent and the subsidiary have common stock ownership;
>
> (2) the parent and the subsidiary have common directors or officers;

(3) the parent and the subsidiary have common business departments;

(4) the parent and the subsidiary file consolidated financial statements and tax returns;

(5) the parent finances the subsidiary;

(6) the parent caused the incorporation of the subsidiary;

(7) the subsidiary operates with grossly inadequate capital;

(8) the parent pays the salaries and other expenses of the subsidiary;

(9) the subsidiary receives no business except that given to it by the parent;

(10) the parent uses the subsidiary's property as its own;

(11) the daily operations of the two corporations are not kept separate; and

(12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*Id.* at 691–92.  Complete ownership and identity of directors and officers are an insufficient basis for applying the alter-ego theory to pierce the corporate veil.  *Id.* at 691 (citing *Nelson v. Int'l Paint Co., Inc.*, 734 F.2d 1084, 1092 (5th Cir. 1984); *Miles v. Am Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983)).  The control required for a parent to be liable under the alter-ego rule "amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation."  *Id.*

TIP Systems argues that Securus is "in direct control of the business of its

subsidiaries." (Docket Entry No. 60 at 6). TIP Systems relies on a letter to the Sheriff of Kane County, Illinois, signed by Michael Stannard, the Securus Territory Manager.[2] The letter states, "Securus/Evercom is pleased to submit our proposal to Kane County . . . ." (Docket Entry No. 60, Ex. G). TIP Systems also points out that Securus's Vice President of Servicing Operations, Robert Lee Rae, Jr., testified in the related case that he is the "senior executive responsible for servicing the Evercom customers." (*Id.*, Ex. H at 4).[3] Rae is a member of an executive leadership team that meets weekly to review the profitability of the inmate phone business. He is personally involved in reviewing a small percentage of bids for inmate phone service contracts. Rae testified that Securus's "top line revenue" from inmate phone commissions is about $280 million. (Docket Entry No. 60, Ex. H at 54). TIP Systems argues that Rae's testimony shows that Securus is directly involved in, and profits from, providing inmate telephone services through its subsidiaries. In addition, TIP Systems asserts that Securus, Evercom, and T-NETIX share the same officers and directors and that

---

[2]Securus objects to Exhibit G of TIP Systems's summary judgment motion, a July 11, 2005 letter from Michael Stannard to the Kane County Sheriff's office, on the grounds that the document is hearsay, is irrelevant, has not been properly authenticated, and violates the best evidence rule. Securus also argues that TIP Systems mischaracterizes the document. (Docket Entry No. 66 at 2). Kelly's revised affidavit is a sufficient predicate. The letter is offered for the limited purpose of showing that Securus offers phone services to customers. Securus's motion to strike the letter is denied.

[3]Securus objects to and moves to strike "TIPS's characterization of" Rae's deposition on the grounds that the deposition was taken in another matter in which Securus was not a party and that TIPS "mischaracterizes the testimony as reflecting or evidencing the operations of Securus." (Docket Entry No. 66 at 2). Securus also objects to portions of Rae's deposition that TIPS Systems does not cite in its response brief as irrelevant and not proper summary judgment evidence. The "evidence" is not a party's characterization of testimony, but the testimony itself. The testimony is relevant. Securus's motion to strike is denied.

these officers "clearly operate the collective entities as one business." (Docket Entry No. 60 at 7).[4]

TIP Systems has failed to show a legal basis to pierce the corporate veil, as necessary to hold Securus liable for allegedly infringing acts committed by Evercom. That Securus and Evercom may share common officers and directors and common business departments is insufficient to pierce the corporate veil. *Jon-T*, 768 F.2d at 691. TIP Systems has not identified or presented evidence showing that the finances, record-keeping, and daily operations of the two corporations are not kept separate; that Evercom's business comes only from Securus; that Evercom operates with grossly inadequate capital; or that Securus uses Evercom's property as its own. Nor has TIP Systems shown that Securus "totally dominates and controls" Evercom so that it is operated as Securus's "business conduit or agent." *Id.* at 691. On this record, Securus cannot be held liable as the parent corporation of its allegedly infringing subsidiary corporations.

TIP Systems contends that Securus may be held directly liable for infringement because Securus is "directly involved in providing inmate telephone services." (Docket Entry No. 60 at 5). Under the Patent Act, direct infringement occurs when a party 'without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent." 35 U.S.C. § 271(a). Securus's website states that it is the "largest independent

---

[4]Securus objects to Exhibits I, J, K, L, M, and N of TIP Systems's summary judgment motion, which are copies of on-line public records of the franchise tax certifications of the Evercom and T-NETIX subsidiaries. (Docket Entry No. 60 at 4). The records are self-authenticating public records; Securus's objection is denied.

provider of collect, pre-paid and debit calling services to local, county, state and private correctional facilities in the United States."[5]   (Docket Entry No. 60, Ex. E).  Securus registered its trademark in association with "telecommunications services, namely, personal communication services . . . provided to prison inmates and related parties."[6]   (*Id.*, Ex. F). TIP Systems also asserts that Robert Rae, Securus's Vice-President of Servicing Operations, stated in his deposition that "his company purchased cord-free phones from Philips & Brooks/Gladwin, Inc."; that "he personally received a prototype of the SPSS" from Wintel and "discussed the phone with Wintel president Hank Smith"; and that his director of supply chain "has also purchased and installed the 7090 CF and 7090 SPSS phones."  (Docket Entry No. 60 at 6).

TIP Systems's reliance on Rae's deposition testimony from the related case is misplaced.  During the deposition, TIP Systems's counsel made clear to Rae that he was using the names "Evercom" and "Securus" imprecisely.  (Docket Entry No. 60, Ex. H at 16). Rae is an officer of Evercom Holdings, Inc. and T-NETIX, Inc.  (Docket Entry No. 60 at 7; *id.*, Ex. I).  He was testifying in the related case in which Evercom and T-NETIX were

---

[5]Securus objects to Exhibit E of TIP Systems's summary judgment motion, excerpts from Securus's website, on the grounds that the excerpts are hearsay, they are not properly authenticated, they are irrelevant, a proper foundation has not been laid, and TIP Systems mischaracterizes the documents.  (Docket Entry No. 66 at 2).  The excerpts are admissible as an admission by a party opponent.  Kelly's declaration lays the necessary predicate to authenticate the excerpts.  Securus's motion to strike is denied.

[6]Securus objects to Exhibit F of TIP Systems's summary judgment motion, data from the United States Patent and Trademark Office, on the grounds that the documents have not been authenticated, the documents are irrelevant, a proper foundation has not been laid, and TIP Systems mischaracterizes the documents.  Kelly's declaration lays the necessary predicate to authenticate the documents.  Securus's motion to strike is denied.

defendants.  The record fails to show that Rae's answers in his deposition about purchases and sales of the 7090CFSS and 7090SPSS phones applied to Securus as well as to Evercom. TIP Systems asserts that "Rae admitted that his company purchased cord-free phones from Phillips & Brooks Gladwin."  (*Id.* at 6).  The deposition transcript shows that Rae worked as a director or vice-president of service and operations at Evercom before it was purchased by Securus (*id.*, Ex. H at 65).  The transcript shows that Philips & Brooks/Gladwin, Inc. went out of business in 2003.  (*Id.*, Ex. H at 65).  Securus did not purchase Evercom until 2004. (*Id.*, Ex. H at 16).

The record does not show that Securus makes, uses, offers to sell, or sells the allegedly infringing products.  TIP Systems has not raised a fact issue as to whether Securus is a proper party to this suit, either as a parent of an infringing subsidiary or as an infringing party.  Summary judgment on this issue is granted.

## III.  Issue Preclusion

Even assuming that Securus is a proper party to this suit because it makes, uses, offers to sell, or sells the 7090CFSS and 7090SPSS phones when it provides inmate telecommunications services to correctional facilities, TIP Systems's claims against Securus are barred by issue preclusion.  This doctrine requires three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.  *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999); *see also Baker by Thomas v. Gen.*

*Motors Corp.*, 522 U.S. 222, 233 n.5, (1998) ("[A]n issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim.").  Relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings.  *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir.1999).  Complete identity of parties in the two suits is not required.  *Next Level Commc'ns*, 179 F.3d 250.  "The principle of non-mutual collateral estoppel is that if a litigant has fully and fairly litigated an issue and lost, then third parties unrelated to the original action can bar the litigant from re-litigating that same issue in a subsequent suit."  *United States v. Mollier*, 853 F.2d 1169, 1174 n.7 (5th Cir. 1988); *see also Gibson v. United States Postal Serv.*, 380 F.3d 886, 890 (5th Cir. 2004).

The elements are met on this record.  The issue at stake in this case is identical to the issue litigated in the related case: whether the 7090CFSS and 7090SPSS inmate phones infringe the '169 and '828 patents.  The record shows that this issue was actually litigated in the related case and the determination of this issue was necessary to the judgment in that case.  Securus points out, and TIP Systems does not dispute, that the current suit and the related case "involve the exact same facility locations, accused telephone products, [and] events." (Docket Entry No. 63 at 6).  TIP Systems acknowledges that the issues are the same by seeking to stay this litigation until its appeal in the related case is resolved.[7]  TIP Systems fully and fairly litigated the issue of infringement in the related case.  TIP Systems may not

---

[7]TIP Systems has failed to show that judicial efficiency supports a stay in the present case until the appeal in the related case is resolved.  TIP System's renewed motion to stay is denied.

relitigate that same issue in this suit.

## IV.    Infringement

The present record shows that Securus does not make, use, offer to sell, or sell the allegedly infringing product and is not a proper party to this suit.  The record also shows that TIP Systems's claims against Securus are barred by collateral estoppel.  Because the parties have briefed the merits, and out of an abundance of caution, this court examines the parties' arguments on the merits.

TIP Systems argues that the 7090CFSS and 7090SPSS phones infringe the '169 and '828 patents literally or under the doctrine of equivalents.  Patent infringement claims involve two analytic steps. *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1373 (Fed. Cir.2004); *Scanner Tech. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1302 (Fed. Cir.2004).  First, the court determines the meaning and scope of the asserted claims. *Scanner Tech.*, 365 F.3d at 1302; *Novartis Pharm. Corp. v. Eon Labs. Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir.2004).  Claim construction is a matter of law. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir.1998). Second, the claims as construed are compared to the allegedly infringing device to determine whether the claims encompass the accused structure.  Whether the accused device contains each element, as properly construed, is a question of fact. *Id.* at 1353.  In this case, the parties do not dispute the claim construction adopted by the court in the related case.  TIP Systems's infringement claims are analyzed below under that claim

17

construction.[8]

## A.    The '169 Patent

### 1.    Literal Infringement

Securus argues that the '169 patent is not literally infringed because the 7090CFSS and 7090SPSS phones do not have a handset.  The '169 patent discloses an "inmate phone of the type having a housing in an interior wall of a prison" that includes "a telephone handset being a handle with an earpiece at one and a mouthpiece at an opposite end." (Docket Entry No. 63, Ex. A-1 at 1).  The court in the related case found that "the proper construction for the term 'handset' is 'a handle with an earpiece at one end and a mouthpiece at the opposite end.'" (*Id.*, Ex. A-3 at 18).  Securus argues that because the 7090CFSS and 7090SPSS phones have "separate earpiece and mouthpiece components, without a handle, that are connected to the inner surface of the phone housing," there is no literal infringement. (*Id.* at 11).  Securus also notes that the '169 patent discloses an improvement "compris[ing] means for permanently mounting the telephone handset vertically within the front wall of the housing, so that the earpiece positioned at top and the mouthpiece positioned at bottom will permanently extend out through the front wall of the housing." (*Id.*, Ex. A-3 at 1).  Securus contends that because the 7090CFSS and 7090SPSS phones do not have a handle, "there can

---

[8]Securus objects to Exhibit O of TIP Systems's summary judgment motion, which is the brief that TIP Systems filed in the related case in response to Evercom's motion for summary judgment. TIP Systems incorporates the brief into its summary judgment response in this case. (Docket Entry No. 60 at 9).  Securus argues that the brief "is not proper summary judgment evidence." (Docket Entry No. 66 at 4).  The objection is overruled to the extent it seeks to bar this court from considering a public record—a brief—filed in the related case.

be no means for permanently mounting the 'handset'" and "there is no earpiece and mouthpiece positioned at the ends of a handset handle that extend through the housing of the phone." (*Id.* at 11). In addition, the '169 patent discloses a "handset cord electrically connected between the push-button dialing pad and the telephone handset." (*Id.*, Ex. A-1 at 1). Securus argues that there is no literal infringement because in the 7090CFSS and 7090SPSS phones because "there are discrete wire connections between the earpiece and mouthpiece to the circuit board, while the dialing pad is connected to the opposite side of the circuit board." (*Id.* at 11). In response, TIP Systems argues that a handset cord is "literally or equivalently present" in the 7090CFSS because wires connect the push button dialing pad and the mouthpiece and earpiece "so that electricity can flow between them." (Docket Entry No. 60, Ex. O at 8–9).

Literal infringement of a claim requires that every limitation recited in the claim appears in the accused device, "i.e ., that the properly construed claim reads on the accused device exactly." *Cortland Line Co., Inc. v. Orvis Co., Inc.*, 203 F.3d 1351, 1358 (Fed. Cir.2000). If even one limitation is missing or not met as claimed, there is no literal infringement. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir.2003); *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir.2002). Summary judgment on literal infringement is proper "when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir.2004) (quoting *Bai*, 160 F.3d

19

at 1353).

The '169 patent discloses an inmate phone with "a telephone handset being a handle with an earpiece at one end and a mouthpiece at an opposite end" and "a handset cord electrically connected between the push-button dialing pad and the telephone handset." (Docket Entry No. 60, Ex. A, Column 5).   The court in the related case found that a "handset" is a "handle with an earpiece at one end and a mouthpiece at the opposite end." TIP Systems does not dispute that the 7090CFSS and 7090SPSS phones do not have a handset.  The 7090CFSS and 7090SPSS phones do not literally infringe the '169 patent.

### 2.    Infringement Under the Doctrine of Equivalents

Securus argues that the 7090CFSS and 7090SPSS phones do not infringe the '169 patent under the doctrine of equivalents "because essential claim limitations are missing from the accused products."  (Docket Entry No. 63 at 11).  Securus argues that the 7090CFSS and 7090SPSS phones have no equivalent to the handset, the means for permanently mounting the handset, or the handset cord claimed in the '169 patent.  Securus asserts that the absence of a handset in the 7090CFSS and 7090SPSS phones makes those phones substantially different from the patented invention because an independently mounted earpiece and mouthpiece can "be mounted at varying distances from each other" and makes the individual earpiece and mouthpiece components less accessible and harder for inmates to misuse than a handset that joins the mouthpiece and earpiece into a single component.  (*Id.* at 12). Securus argues that to read the '169 patent so broadly as to include inmate phones that do not have a handset with a handle "would render the limitations [in the '169 patent] meaningless

20

and sweep into the '169 patent inventions not disclosed or enabled by the '169 specifications." (*Id.* at 12).  In addition, Securus argues that the 7090CFSS and 7090SPSS phones have no handset cord electrically connected to the dialing pad or any equivalent structure.

In response, TIP Systems argues that the handle of the handset claimed in the '169 patent "functions to space the earpiece and mouthpiece elements at a fixed distance apart, and to contain the electrical wiring." (Docket Entry No. 60, Ex. O at 5).  Because "the handle is not accessed by the human hand," TIP Systems contends that "the usual function of a handle is not present." (*Id.*, Ex. O at 6).  TIP Systems asserts that the 7090CFSS phone infringes the '169 patent because in the 7090CFSS phone, the earpiece and mouthpiece are also mounted at a fixed distance apart, such that "the earpiece and mouthpiece are the only accessible portions" and the electrical wiring between the two components "is now contained in the phone housing." (*Id.*, Ex. O at 6).  TIP Systems also argues that the '169 patent's clamp assembly for mounting the handset "functions to affix the handset to the phone housing" and "is equivalent to the 7090CF's circular clamp arrangement," which mounts the earpiece and mouthpiece to the phone housing. (*Id.*, Ex. O at 8).  TIP System further argues that the wires connecting the push button dialing pad to the mouthpiece and earpiece of the 7090CFSS phone are equivalent to the handset cord connecting the push button dialing pad and the handset in the '169 patent.  TIP Systems argues that Securus provides no evidence showing that the earpiece and mouthpiece in the 7090CFSS phone may be spaced at varying distances or that they are less accessible to the user than the handset in the '169 patent.

21

"The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002).  Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent.  The doctrine of equivalents must be applied to individual elements of the claim, not the invention as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Eagle Comtronics, Inc. v. Arrow Commc'n. Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir.2002).  The test for equivalence is whether the accused structure performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention. Warner-Jenkinson , 520 U.S. at 40.  Summary judgment of noninfringement under the doctrine of equivalents is appropriate if "no reasonable jury could determine two elements to be equivalent." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1360 (Fed. Cir.2002) (quoting *Warner-Jenkinson*, 520 U.S. at 39 n. 8).

Equivalence must be determined against the context of the patent, the prior art, the prosecution history, and the nature of the technology claimed.  A court may determine, as a matter of law, that the "all limitations" rule, the prior art, or prosecution history estoppel bar a patentee from asserting the doctrine of equivalents. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir.2001); *see also Festo*, 535 U.S. at 736;

22

*Glaxo Wellcome, Inc. v. Impax Labs., Inc.*, 356 F.3d 1348, 1351 (Fed. Cir.2004). The "all limitations rule" provides that the doctrine of equivalents does not apply if the doctrine would vitiate an entire claim limitation. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir.2003). The doctrine of equivalents may not be applied "if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Wilson Sporting Goods Co. v. David Geoffrey and Assocs.*, 904 F.2d 677, 683 (Fed. Cir.1990) ("A patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims."). Prosecution history estoppel may bar the patentee from asserting infringement under the doctrine of equivalents if the scope of the claims have been narrowed by amendment or argument during the patent prosecution. *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir.2003). If one of ordinary skill in the art would consider the accused product to be surrendered subject matter, the doctrine of equivalents cannot be used to claim infringement by that product. *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324–25 (Fed. Cir.2002).

TIP Systems's arguments are not persuasive. "The doctrine of equivalents cannot be employed in a manner that wholly vitiates a claim limitation." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1309 (Fed. Cir. 2007) (citing *SciMed Life Sys.*, 242 F.3d at 1346). *See, e.g.*, *Forest Labs, Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (Fed. Cir. 2001) (finding that the patentee's argument that a limitation on the percentages of water in a composition was "irrelevant" when compared to the accused composition vitiated that limitation); *Tronzo*

*v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (holding that the patentee's argument that "any shape would be equivalent to the conical limitation" would write such a limitation out of the claim); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997) (finding that the patentee's argument that a limitation of an "elongated slot at the top of the container body" included a slot located in the interior of the container would vitiate that limitation).   In considering whether an accused product infringes a patent under the doctrine of equivalents, the Federal Circuit examines "the simplicity of the structure, the specificity and narrowness of the claim, and the foreseeability of variations at the time of filing the claim with the PTO."  *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1360 (Fed. Cir. 2005) (citing *Sage Prods.*, 126 F.3d at 1425).   In *Sage Products*, the Federal Circuit found that "the claim at issue defines a relatively simple structural device" and that a "skilled patent drafter would foresee the limiting potential" of a limitation specifying an elongated slot at the top of a container with a "first constriction extending over said slot."  126 F.3d at 1422.  The *Sage Products* court noted:

> No subtlety or complexity of the technology, nor any subsequent change in the state of the art, such a later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim.  If [the patentee] desired broad patent protection for any container that performed a function similar to its claimed container, it could have sought claims with fewer structural encumbrances. . . . [A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure.

*Id.* at 1425.

In this case, the handset is a simple structure.  The language of the claim is both specific and narrow.  The handset is "a handle with an earpiece at one end and a mouthpiece at an opposite end."  The patent claims as an improvement a "means for permanently mounting the handset" to the front wall of the housing so that the earpiece and mouthpiece extend through that wall for use.  The 7090CFSS and 7090SPSS phones do not achieve the same result in substantially the same way.  *See Warner-Jenkinson*, 520 U.S. at 40.  The earpiece and mouthpiece in the 7090CFSS and 7090SPSS phones are mounted separately to the interior of the front wall of the phone's housing compartment.  Unlike the '169 patent, in which the handset provides the point of attachment, each component in the 7090CFSS and 7090SPSS phones has its own point of attachment.  The mounting mechanisms of the 7090CFSS and 7090SPSS phones do not incorporate a new advancement in technology such that TIP Systems could not have understood the significance of the limitation of a handset when drafting its claims for the '169 patent.  Using the doctrine of equivalents to find infringement by the 7090CFSS and 7090SPSS phones would vitiate the limitation of the handset claimed by the '169 patent.  The 7090CFSS and 7090SPSS phones do not infringe the '169 patent under the doctrine of equivalents.

### B.    The '828 Patent

#### 1.    *Literal Infringement*

Securus argues that the 7090SPSS phone does not literally infringe the '828 patent because the mouthpiece and earpiece of the 7090SPSS phone do not extend outward through apertures in the front wall of the phone's housing compartment to provide a relief surface on

the outside of the compartment.  The '828 patent claims a mouthpiece and earpiece "extending outward from said housing through said aural apertures such that a user places his ear next to said aperture for said earpiece."  (Docket Entry No. 60, Ex. B, Column 4). The court in the related case construed this claim to mean that "the earpiece and the mouthpiece present a raised surface on the outside of the phone for positioning said ear and mouth of said user."  (Docket Entry No. 63, Ex. A-3 at 25).  Because the earpiece and mouthpiece of the 7090SPSS are attached to the interior wall of the housing compartment and do not project outward through the wall, Securus contends that there is no literal infringement.

Securus also argues that neither the 7090SPSS phone nor the 7090CFSS phone literally infringe the '828 patent because they do not have a "dial tone actuating switch electronically connected to said phone line and said electronic circuit board."  (Docket Entry No. 60, Ex. B, Columns 5, 6).  In the related case, the court construed the '828 patent claims to disclose a "dial tone actuating switch electronically connected to both the said phone line and said electronic circuit board, such that electricity can pass among these elements." (Docket Entry No. 63, Ex. A-3 at 22).  The activating switch in the 7090CFSS and 7090SPSS phones is separately connected to the circuit board and is not connected directly to the phone line.    TIP Systems acknowledges in its response that in the 7090CFSS phone "the activating switch is electronically connected to the electronic circuit board, and its phone line is connected to the electronic circuit board."  (Docket Entry No. 60, Ex. O at 10).  TIP Systems nevertheless argues that the 7090CFSS phone literally infringes the '828 patent because "the

26

dial tone actuating switch of the 7090CF is electronically connected to both the phone line and the electronic circuit board such that electricity can pass among these elements." (*Id.*, Ex. O at 10). TIP Systems does not address whether the 7090SPSS phone literally infringes the '828 patent in its response.

The '828 patent claims a mouthpiece and earpiece that are "secured to said aural apertures by an annular seal." (Docket Entry No. 60, Ex. B, Column 4). The court in the related case construed this claim to mean that the mouthpiece and earpiece are secured by a "ring-like seal." (Docket Entry No. 63, Ex. A-3 at 26). The components of the 7090CFSS phone are secured "by a separate mounting structure consisting of two threaded studs, two nuts, washers, and a bracket assembly." (*Id.* at 17). Securus also notes that the annular seal of the '828 patent secures the earpiece and mouthpiece to the apertures in the front wall through which the pieces extend. Because the annular seals "are a part of the structure disclosed in the claim limitation" and the 7090SPSS phone does not have earpieces or mouthpieces that protrude through the front wall of the housing compartment, Securus contends that the 7090SPSS phone does not literally infringe the '828 patent. (*Id.* at 17). TIP Systems argues that the 7090CFSS phone literally infringes the '828 patent because the 7090CFSS phone "features a ring of adhesive which augments the mounting between the earpiece/mouthpiece caps (extending from the front panel) and the cylindrical metal housing (behind the front panel)." (*Id.*, Ex. O at 11). The record does not show whether this ring of adhesive secures the earpiece and mouthpiece to the housing or whether, as Securus argues, the earpiece and mouthpiece are secured by a bracket assembly.

27

Regardless of whether the 7090CFSS phone has an annular seal securing the mouthpiece and earpiece to apertures in the housing compartment, the 7090CFSS phone does not literally infringe the '828 patent. *See Cortland Line Co.*, 203 F.3d at 1358. Literal infringement of a claim requires that every element and limitation in a correctly construed claim be embodied in the accused system. *Hutchins v. Zoll Medical Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007). The '828 patent requires a "dial tone actuating switch electrically connected to said phone line and said electronic circuit board." (Docket Entry No. 60, Ex. B, Col. 5, 6). The court in the related case interpreted this claim to require the switch to be electrically connected to both the phone line and the circuit board. In the 7090CFSS phone, the dial tone activating switch is connected only to the circuit board; it is not connected to the phone line. The 7090CFSS phone does not literally infringe the '828 patent because the earpiece and mouthpiece do not protrude from the front wall of the phone's housing compartment and the dial-tone activating switch is not electrically connected to the phone line.

### 2.    *Infringement Under the Doctrine of Equivalents*

Securus argues that the 7090CFSS and 7090SPSS phones do not infringe the ''828 patent under the doctrine of equivalents because these phones do not have annular seals or an equivalent securing the mouthpiece and earpiece and because the dial-tone actuating switch of each phone is not electrically connected to both the phone line and circuit board. Securus contends that "allowing a finding of infringement under the doctrine of equivalents would render the structural and functional limitations claimed in the patent moot." (Docket

Entry No. 63 at 17).  In response, TIP Systems argues that "it is only minor, conventional circuitry which distinguishes the '828 patent and the 7090CF."  (Docket Entry No. 60, Ex. O at 10).

TIP Systems's argument is not persuasive.  To find that the wiring of the 7090CFSS and 7090SPSS phones is equivalent to the wiring of the '828 patent would vitiate the claim requiring a "dial tone actuating switch electrically connected to said phone line and said electronic circuit board.  (Docket Entry No. 60, Ex. B, Columns 5, 6).  In determining that an equivalency finding would vitiate a claim limitation in *Freedman Seating Co.*, the Federal Circuit stressed that the claimed structure was simple, the claim language was specific and narrow, and variations of the structure were foreseeable at the time the patent was drafted and filed with the PTO.  420 F.3d at 1359.  As TIP Systems acknowledges, the claimed structure in the '828 patent is simple and the claim language is specific and narrow.  The 7090CFSS phone does not take advantage of a new advancement in technology such that TIP Systems could not have understood the significance of limiting its claim to a switch connecting to both the phone line and the circuit board.  Any telephone requires electrical connections among the phone line, circuit board, and dial tone actuating switch.  (Docket Entry No. 62, Ex. O at 9).  TIP Systems limited its claim in the '828 patent to an electrical wiring configuration in which the switch is connected to both the phone line and the circuit board.  To find that the 7090CFSS  phone, in which the switch is connected only to the circuit board, is equivalent to the '828 patent would vitiate this claim limitation.  The 7090CFSS and 7090SPSS phones do not infringe the '828 patent under the doctrine of equivalents.

### C.    Invalidity

This court need not reach Securus's argument that the '169 and '828 patents are invalid because preclusion applies to the infringement claims against Securus; the record does not support an infringement claim against Securus; and the 7090CFSS and 7090SPSS phones do not infringe the '169 and '828 patents.   Securus's objections to the summary judgment evidence TIP Systems submits to address the invalidity arguments are denied as moot.   This court notes, however, that Securus's burden to show invalidity based on obviousness may be made easier by the recent Supreme Court decision in *KSR International Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007).

Section 103 of the Patent Act forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."   35 U.S.C. § 103. Neither party addresses *Teleflex*.   127 S.Ct. at 1740.   The *Teleflex* Court stressed that in an obviousness analysis, a court must consider "the objective reach of the claim.   If the claim extends to what is obvious, it is invalid under § 103."   *Id.* at 1741–42.   The *Teleflex* Court stated:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known operations within his or her technical grasp.   If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

*Id.*

30

In determining whether a patent's subject matter is obvious, "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.* "Often, it will be necessary for a court to look to interrelated teachings of multiple patents, the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id.* at 1740–41. The parties do not sufficiently brief these factors for this court to determine whether the '169 and '828 patents are obvious under the *Teleflex* standard.

### D.      Conclusion as to Securus's Summary Judgment Motion

In summary, Securus has shown that it neither makes, uses, offers to sell, or sells infringing products; that TIP Systems is precluded from asserting claims against Securus that it previously litigated in the related case; and that the 7090CFSS and 7090SPSS phones do not infringe the '169 and '828 patents.  Securus's summary judgment motion is granted.

## V.     Conversant and Profanchik's Motion for Sanctions

Conversant and Profanchik move for sanctions against TIP Systems on the grounds that TIP Systems failed to mediate in good faith or to file a joint pretrial order as required by this court, and that TIP Systems failed to file a timely reply to Conversant's counterclaim.

Conversant, a prison-telephone-service provider, provided telephone service between August and December 2005 for 300 phones in Oklahoma City Jail.  Fifty of these phones were cord-free phones that allegedly infringed the '169 and '828 patents.  Conversant

31

removed these phones from service in November 2005.  The phones generated $3,624.18 in revenue while they were in service.  (Docket Entry No. 58 at 3).  Under the most generous damages estimated by experts in this case, which assumes treble damages due to willful infringement, TIP Systems's damage award against Conversant and Profanchik would be $2,037.51.  (*Id.* at 4).  Conversant offered TIP Systems $10,000 to settle TIP Systems's infringement allegations on November 14, 2005.  TIP Systems rejected this offer and filed suit on January 23, 2006.  (Docket Entry No. 1).

This court entered an order in 2006 referring the case to mediation.  (Docket Entry No. 40).  Counsel for TIP Systems agreed with counsel for  Conversant and Profanchik that Conversant and Profanchik need not participate because the cost of mediation would exceed Conversant and Profanchik's potential liability.  Conversant and Profanchik assert that they made numerous attempts to communicate with TIP Systems to reach a settlement, but TIP Systems refused to cooperate.  Conversant and Profanchik contend that TIP Systems similarly failed to communicate with them about the joint pretrial order due on March 16, 2007.  In addition, TIP Systems did not respond to Conversant's March 2006 counterclaim for a year.

Conversant and Profanchik argue that TIP Systems's failure to comply with this court's mediation and scheduling orders warrant dismissal of the case under Federal Rule of Civil Procedure 41.  Conversant and Profanchik also argue that this court should enter a default judgment against TIP Systems under Federal Rule of Civil Procedure 55 because of the failure to file a timely response to Conversant's counterclaim.  Conversant and

Profanchik seek costs, expenses, and attorney's fees associated with their attempts to communicate with TIP Systems about settlement and the joint pretrial order, their motion for settlement conference, and the motion for sanctions.

In response, TIP Systems argues that Federal Rule of Civil Procedure 16 "does not empower courts to mandate a settlement or sanction a party for failing to settle," (Docket Entry No. 59 at 1), and that evidence of conduct or statements made in compromise negotiations is not admissible under Federal Rule of Evidence 408, (*id.* at 2). TIP Systems points out that during settlement negotiations, Conversant and Profanchik offered $311.85 in settlement. TIP Systems refused this amount. TIP Systems argues that neither its refusal of a settlement offer nor its other litigation conduct warrants dismissal or other sanctions. TIP Systems also argues that Conversant suffered no prejudice as a result of its failure to file the joint pretrial order by March 16, 2007. TIP Systems asserts that "[l]eading up to March 16, Plaintiffs were vigorously litigating common legal issues before Judge Gilmore in the related action, which had an earlier trial setting, more parties, and more damages at stake. There is no evidence that Conversant was prejudiced by Plaintiffs' focus on the related action." (Docket Entry No. 59 at 8). In lieu of filing pretrial materials, on March 16, 2007 TIP Systems filed a motion to stay this suit based on the grant of summary judgment in the related case. TIP Systems also argues that this court's March 29, 2007 order permitting TIP Systems to take a Rule 30(b)(6) deposition of Securus's corporate representative "effectively vacated" the October 20, 2006 scheduling order. Similarly, TIP Systems argues that Conversant has failed to show prejudice due to TIP Systems's failure to file a timely answer

33

to Conversant's counterclaim.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss a plaintiff's claim for failure to prosecute or to comply with any order of the court.  Rule 41(b) dismissals "are affirmed only upon a showing of a clear record of delay or contumacious conduct by the plaintiff, . . . and where lesser sanctions would not serve the best interest of justice."  *Wash v. Johnson*, 108 Fed. Appx. 154, 156 (5th Cir. 2004) (quoting *Dorsey v. Scott Wetzel Servs.*, 84 F.3d 170, 171 (5th Cir. 1996)).  Dismissal "is reserved for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors," which include "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct."  *Rogers v. Kroger Co.*, 669 F.2d 317, 320 & n.5 (5th Cir. 1982).  TIP Systems's failure to file a joint pretrial order does not present an egregious circumstance that warrants dismissal or other sanctions.  The Fifth Circuit has affirmed dismissals only in cases where a party repeatedly failed to comply with court orders, despite warnings that sanctions might result.  *See, e.g.*, *Thanedar v. Time Warner Commc'ns of Houston, LLP*, 227 Fed. Appx. 385 (5th Cir. 2007) (affirming dismissal "[i]n light of [Plaintiff's] serially contumacious conduct"); *Beard v. Experian Info. Solutions Inc.*, 214 Fed. Appx. 459 (5th Cir. 2007) (affirming dismissal on the grounds that the plaintiff "failed to comply with several court orders and failed to prosecute his case" after repeated warnings that failure to timely comply with the court's orders could result in sanctions,

34

including dismissal); *Dorsey*, 84 F.3d 170 (affirming dismissal after the plaintiff failed to timely file a joint pretrial order, appear for docket call, timely designate an expert, and appear for trial); *Salinas v. Sun Oil Co.*, 819 F.2d 105, 106–07 (5th Cir. 1987) (affirming dismissal after the plaintiff had engaged of a "pattern of delay" for over two years "in the face of three warnings of dismissal").  TIP Systems has not engaged in sufficiently egregious conduct to warrant the sanctions Conversant seeks.

Similarly, TIP Systems's failure to cooperate in settlement discussions does not warrant sanctions.  Conversant relies on Rule 41(b) as a basis for sanctions for TIP Systems's failure to cooperate.  As noted above, counsel for TIP Systems agreed with counsel for Conversant and Profanchik that these parties would not participate in court-ordered mediation.  TIP Systems's conduct in the parties' voluntary settlement discussions does not present a clear record of egregious behavior in violation of this court's order, such that dismissal or lesser sanctions would not be appropriate.  *See Wash*, 108 Fed. Appx. at 156. Conversant does not identify another statutory basis for sanctions for TIP Systems's failure to cooperate in settlement negotiations.

Conversant and Profanchik have remedies available other than sanctions.  Federal Rule of Civil Procedure 68 allows a defendant to make an offer of judgment to an adverse party at any time more than ten days before the trial begins.  The offer "allow[s] judgment to be taken against the defending party" for an amount specified in the offer, including "costs then accrued."  Fed. R. Civ. P. 68.  If the offeree rejects the offer of judgment and the judgment finally obtained by the offeree at trial is less favorable than the offer, "the offeree

must pay the costs incurred after the making of the offer." *Id.* Rule 68 protects defendants with a small stake in the controversy by allowing them to make an offer of judgment and recover in excess of that offer.

Conversant and Profanchik could also have filed an early motion to dismiss or an early summary judgment motion to reduce litigation costs. Sanctions is not the only remedy available for a defendant whose exposure is less than litigation costs.

TIP Systems has responded to Conversant's counterclaim. Default judgments are generally disfavored and should not be granted on the claim, without more, that the defending party has failed to meet a procedural time requirement. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). Courts generally have refused to enter a default judgment if the defending party has made an appearance in the suit by responding to the complaint. *See, e.g.*, *S.E.C. v. Amerifirst Funding, Inc.*, No. CIV. A. 3:07CV1188-D, 2007 WL 4226921 (N.D. Tex. Nov. 29, 2007); *Dahlstrom v. Moore*, No. 4:07CV229, 2007 WL 2908448 (E.D. Tex. Oct. 3, 2007); *Bilbe v. Belsom*, No. 06-7596, 2006 WL 3388482 (E.D. La. Nov. 21, 2006). Because TIP Systems has responded, default judgment under Rule 55 is not warranted.

Conversant and Profanchik's motion for sanctions is denied on the present record.

## IV.    Conclusion

TIP System's renewed motion to stay is denied.  Securus's motion to strike is denied.

Securus's summary judgment motion is granted.  Conversant's motion for sanctions is

denied.

SIGNED on January 10, 2008, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge